ARNSTINE BROTHERS & MIER v. JOHN E. TREAT.

*Fraudulent purchase—Replevin—Evidence—Practice—Notice to pro-
duce papers—Secondary evidence.*

1. It is not commendable practice to allow a witness to be inter-
rupted without some substantial reason; and such a practice,
which can have no effect except to break up the course of tes-
timony, has a direct tendency to confuse witnesses, and cannot
help a jury in its duties.

2. In a suit involving an alleged fraudulent purchase of goods,
where the order was sent to the vendors by mail, one of the
vendors, who went to the vendee's place of residence to inves-
tigate his pecuniary condition, may testify to the forwarding of
the order to him by his firm, as explaining why he went to see
the vendee.

3. An essential element of *actionable* fraud is the *fact* that it is relied
and acted on, and it is competent for the party claiming to have
been defrauded to testify to *such* fact.

4. In a case involving an alleged fraudulent purchase of goods by
means of false representations made by the vendee as to his
financial condition, his whole conduct at the time in any way
concerning his business and property is material, and, instead
of drawing close lines to exclude facts, a very full inquiry into
all of the circumstances should be allowed.

5. Single facts are seldom enough in themselves to show fraud,
while the surroundings, although each may be, standing alone,
not intrinsically serious, will, when looked at together, be very
important, if not decisive, as they usually are.

6. In a replevin suit, a witness having personal knowledge of the
value of the property may be asked to state it, and it is cer-
tainly very unnecessary strictness to prevent his stating the
amount of the appraisement.

7. In a suit involving the alleged fraudulent purchase of goods by
means of false representations as to the vendee's financial stand-
ing, it is not irrelevant to show that the defendant was already
indebted to the plaintiffs; and the entire amount of defend-
ant's indebtedness is pertinent, both as bearing on the truth of
his representations, and also on the question of insolvency.

8. A notice to produce all letters and papers from a certain date to
the time of the trial, covering a period of five years, none of

which are indicated by date or subject, or reference to any particular transactions, is too vague to be used as a basis for evidence of their contents.

Error to St. Joseph. (Loveridge, J.) Argued October 2 and 3, 1888. Decided October 12, 1888.

Replevin. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*S. M. Constantine (W. G. Howard*, of counsel), for appellants.

*H. O. Bliss* and *Dallas Boudeman*, for defendant.

CAMPBELL, J. Plaintiffs, who are jewelers in Cleveland, Ohio, sold a bill of goods to defendant at Three Rivers, on June 10, 1887, and upon his failure, about a week thereafter, replevied such of the goods as they could find, claiming a right to rescind. This suit is the action of replevin brought for the property. Upon the trial the defendant obtained judgment, and plaintiffs bring error.

The controversy, of course, turned on the question whether the sale was or was not made under such circumstances as to be legally voidable by the plaintiffs. The principal inquiry turned on defendant's financial condition, and alleged unfairness in a purchase made with actual misrepresentation, direct and indirect, as to his position.

It will not be important, as the record stands, to attempt a full recital of circumstances, especially as there is some disagreement concerning facts. There seems to be no difficulty in discovering that defendant was in bad condition. But the errors relied on chiefly relate to what plaintiffs claim to have been obstacles thrown in the way of getting out the facts, by adverse rulings.

The case made by plaintiffs, so far as their testimony

goes, was to the effect that in the beginning of June, 1887, defendant applied to them for a bill of goods, which they did not care to furnish without investigation; that one of plaintiffs' firm went to Three Rivers, and saw defendant, who gave a statement of his property and debts, agreeing with a written statement which he had given during the previous December, which he re-affirmed. This made his assets, in addition to a $5,000 life policy, amount to $9,000, and his debts to only $1,200. Upon this statement the sale was made upon June 10. Upon the 20th of the same month, the same plaintiff, having heard of his failure, went again to Three Rivers, and demanded the goods, but was refused. Having sued out the writ in this cause, he again went, and, after some difficulty, got into the store, where, after some parleying, and attempts to induce the plaintiff and sheriff to go out of sight, defendant agreed if they would turn their backs to produce so much of the property as was left. He then, when their backs were turned, picked out a package from a heap of rubbish where it was hidden, and produced a part of the property. Plaintiff Arnstine had seen in a mirror what defendant was doing, and proceeded himself to make further search, and found about $1,000 worth more of jewelry, including a considerable part of the goods in question, concealed in the same place.

Before proceeding to the more important questions presented by the record, we cannot overlook the fact that the plaintiff Arnstine, who was the first witness in the case, was stopped repeatedly by frivolous objections to a perfectly proper course of narrative, which introduced very little which could by any fair construction be regarded as improper or capable of mischief. It is not commendable practice to allow a witness to be interrupted without some substantial reason; and such a practice, which can have

no effect except to break up the course of testimony, has a direct tendency to confuse witnesses, and cannot help a jury in its duties. Some of these objections which were allowed went far enough to require us, if there were no other grounds for doing so, to set aside the verdict.

The order from defendant to plaintiffs, under which the goods were sold, was dated at Three Rivers, June 1, 1887, and directed to Cleveland. Henry W. Arnstine, one of the firm, was then in Bay City. For what reason we cannot imagine, his statement that this letter was sent to him at Bay City, and that he thereupon came to Three Rivers for the purpose of seeing defendant, was stricken out as irrelevant. It was a proper explanation why he went there, and it was certainly material and proper.

The witness then related the conversation he had with defendant about his pecuniary condition, and was proceeding to state that he acted in reliance upon it, when he was stopped, and that was shut out. As the case was one of fraud, and an essential element of actionable fraud is the fact that it is relied on and acted on, it was very material to know whether such reliance was given, and it was error to rule otherwise.

It was also error to refuse to let the witness testify that information of defendant's failure a few days after led him to go again to Three Rivers to see defendant. And it may also be remarked that what was relevant or irrelevant to the issue was usually as much so when offered on one side as on the other. There are some instances where this seems to have been overlooked.

Mr. Constantine, who called on defendant to see him about some claims he had in charge, was not allowed to state that he actually held the claims, or that he found defendant making an inventory, although he was allowed to say he told defendant he held the claims, and that defendant said he proposed to make an inventory, and

see if he could not procure a compromise. The fact that he actually held claims was important, as making his errand a proper one, and the fact that an inventory was in progress was more significant than a statement of a purpose to make one. And it was certainly pertinent, on the question of fraudulent intent and conduct, to explain all the circumstances apparent in defendant's conduct. His whole conduct at that period in any way concerning his business and property was material, and, instead of drawing close lines to exclude facts, a very full inquiry into all the circumstances should have been allowed. Single facts are seldom enough in themselves to show fraud, while the surroundings, although each may be, standing alone, not intrinsically serious, will, when looked at together, be very important, if not decisive, as they usually are.

It was proper to ask the witness Arnstine the value of the property which he found in the store. He had personal knowledge of it, and it does not appear to us that the question related to the appraisement. Had it done so, it is certainly very unnecessary strictness to prevent a person from answering what is in the files of the case, and may be produced on the spot, if it becomes important.

We do not think it was irrelevant to show that defendant was already indebted to plaintiffs. If it had been, there was no more reason why defendant should have been allowed to go into previous dealings than the plaintiffs. An existing or recent transaction of a similar character may have some tendency to explain a course of dealing. But transactions entirely distinct in their nature, as well as remote in time, while there may be some connecting link between them, are not universally relevant. In this connection, objection was made by plaintiffs to the introduction of secondary evidence by a copy of a letter claimed

to have been written by defendant to plaintiffs, two days after the date of his December statement of liabilities and assets.

A notice appears to have been given to produce all letters and papers from January, 1883, to the date of trial, covering a period of five years. No papers were indicated either by date or subject, or reference to any particular transaction. This notice was altogether too vague. A party who is prepared with secondary evidence knows what he wishes to prove. To compel a business man to rummage his files for several years without any indication of what is wanted is unreasonable. The notice should always be such as to reasonably enable the party notified to understand what is wanted. Without such knowledge, he cannot prepare to meet or explain the facts sought to be shown by the documents. There is no authority for making a drag-net out of such a notice. In this particular case the only supposable relevancy of this letter was a withdrawal of the statement made on December 6, 1886, and an attempt to rescind the sale made on the faith of it. The letter does not attempt to correct or explain it, and that would be the only legitimate purpose for which it could be admissible. But the bulk of the letter consists of assertions of defendant's business credit and standing, which could not be allowed to make testimony in his own favor. The letter had no apparent relevancy to anything which had appeared in the case, either by explanation or contradiction. Had it corrected or explained the statement of December 6, it would have been relevant.

Defendant's amount of indebtedness was pertinent, both as bearing on the truth of his representations, and also on the question of insolvency. Direct fraud and insolvency, which would bear on fraud as a strong circumstance, were equally relevant, and the several rulings which limited or shut out this inquiry were erroneous, and the

more so that the charge refers to insolvency, the proof of which was shut out. Upon such an issue as appeared in this case, these matters were all legitimate subjects of cross-examination, as well as of direct proof.

The charge was probably meant to comply with the requests to charge, but was made inoperative by the great amount of rulings excluding pertinent evidence.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.